United States District Court
Northern District of California

United States District Court
Northern District of California

UNITED STATES OF AMERICA,
Plaintiff,
v.
LAURENCE PULLEN,
Defendant.

Case No.: CR 12-0829 MAG

**RELEASE ORDER**

## I. INTRODUCTION

Defendant Laurence Pullen was charged in a sealed indictment with violations of 18 U.S.C. § 2252(a)(2) (distribution of child pornography) and § 2252(a)(4)(B) (possession of child pornography). The indictment also includes a forfeiture allegation. On December 6, 2012, the government moved for Defendant's detention pursuant to the Bail Reform Act and asked for a hearing pursuant to 18 U.S.C. § 3142(f).

Pretrial Services prepared a full bail study and recommended that Defendant be detained. The court conducted a bail hearing on December 13, 2012. Defendant was present and was represented by Assistant Federal Defender Edward Smock. Assistant United States Attorney Rodney Villazor appeared for the government. Pretrial Services Officer Carol Mendoza was also present at the hearing. Several of Defendant's friends and family members were also present at the hearing.

After considering the parties' proffers, the bail study, and statements from Defendant and his family members and friends at the hearing, the Court orders that Defendant be released to home detention with electronic monitoring, in the custody of Stuart Selland and Yolanda Cronin, on a $75,000 bond secured by real property owned by Yolanda Cronin and Debra Pullen, subject to the release conditions set out on the bond form.

**II. ANALYSIS**

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or community danger. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases..." *U.S. v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (quoting *U.S. v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions ... [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release "should rarely be denied." *Motamedi*, 767 F.2d 1403 at 1405; *see also U. S. v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").

The court must order a defendant detained if the court finds that conditions cannot be fashioned to assure the defendant's appearance in court, or the safety of the community or another person. 18 U.S.C. § 3142(e)(1). The government bears the burden of proof on both prongs. The government must show by a preponderance of the evidence that the defendant is a flight risk, and must prove by clear and convincing evidence that defendant poses a non-mitigable danger to the community. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Motamedi*, 767 F.2d at 1406-1407.

Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least

restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d 1403, 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

The Ninth Circuit has held that the weight of the evidence is the least important of the factors. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408. "The[] factor[] may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*

**A. Rebuttable Presumption of Detention**

Defendant is charged with violations of 18 U.S.C. § 2252(a)(2) (distribution of child pornography) and § 2252(a)(4)(B) (possession of child pornography). This charge gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. §3142(e)(3)(E). This rebuttable presumption, however, merely shifts the burden of *production* to the defendant; the ultimate burden of *persuasion* remains with the government. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

Here, the defense proffered evidence that Defendant is not an umitigable danger to the community or a flight risk, including his lack of a history of violence, failures to appear, alcohol or drug use, or mental illness, and his history of self-employment, stable residential history, and long-standing ties to the Northern District of California.

The defense also produced viable sureties Yolanda Cronin and Robert Cronin, Defendant's ex-brother and sister-in-law. Despite being informed of the seriousness of the charges against

Defendant, the sureties were willing to post their property, which is worth $150,000 and is owned outright, on his complying with the conditions of release. David Anderson, a friend of Defendant's for 57 years, also signed as a surety on the bond and was willing to post $50,000 cash to secure Defendant's appearance. In addition, Stuart Selland and Debra Pullen are willing to serve as custodians for the Defendant, and visit him on a daily basis to ensure that he is complying with the terms of his pretrial release. Stuart Selland has been a good friend of Defendant's for 30 years. He is a self-employed photographer and lives only 5-7 miles away from Defendant.

The government bears the burden of persuasion showing by a preponderance of the evidence that the accused is a non-mitigable flight risk, and by clear and convincing evidence that defendant poses a non-mitigable danger to the community. The government's only argument in support of detention is that Defendant poses a risk of danger to the community that cannot be reasonably mitigated through any conditions of release. The government does not argue that Defendant poses a risk of flight. As discussed more fully below, the Court finds that Defendant has rebutted the presumption of detention, and the government has not met its burden of proof.

**B. The Nature and Circumstances of the Offense and the Weight of the Evidence**

The indictment states that on March 23, 2012, Defendant knowingly distributed at least one depiction of child pornography, and that on April 27, 2012, Defendant knowingly possessed at least one depiction of child pornography. The indictment does not contain facts beyond these allegations. According to the indictment, the offenses charged carry maximum penalties of 40 and 10 years. Defendant faces a mandatory minimum of 15 years if he is convicted with a prior child exploitation felony conviction.

At the hearing, the government proffered that agents executing a search warrant found hidden cameras in the bedroom and bathroom of Defendant's former 19-year-old female roommate (who no longer lives at Defendant's house). She was unaware of the cameras. Defendant is not charged with a crime regarding the cameras. The government also proffered that the agents found photographs of a local high school girls' volleyball team that Defendant had no connection to. Pretrial Services noted, however, that Defendant's 1999 conviction for having sex

with a minor involved a high school volleyball team for which Defendant was a volunteer coach. Defendant's computer, which contained evidence of the possession and distribution of child pornography, also contained naked pictures of his roommate. The computer also had a "scrubbing" program installed on it.

Defendant did not resist arrest and no contraband was found on his person.

The nature and circumstances of the offense show that Defendant may have a proclivity towards viewing child pornography, and that he therefore may pose a danger to the community by distributing child pornography over the internet while he is on pretrial release. There are no allegations or facts suggesting that Defendant has made child pornography. Although he may have taken naked photographs of his female roommate without her consent, the government has not proffered that she was a minor when the photographs were taken. In any case, she has moved out of the house, and Defendant currently lives alone. Regarding danger to the community while on pretrial release, then, the nature and circumstances of the offense show only that Defendant might engage in peer-to-peer file sharing of child pornography that was already available online.

The Court finds that this danger can be reasonably mitigated by the conditions of release, including that Defendant remain on lockdown in his home, enforced by electronic monitoring, without a computer, smartphone, or internet access, and have no contact with minors. His custodians will also check on him every day to ensure that Defendant is complying with the conditions of his pretrial release.

The weight of the evidence against Defendant is likely substantial, as evidence of peer-to-peer sharing of child pornography was allegedly found on his computer. But the weight of the evidence is the least important factor in the pretrial release decision. *See Motamedi*, 767 F.2d at 1408.

**C. The History and Characteristics of Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 59 years old. He has born in Oakland and lived there for his entire life until he moved to Pleasant Hill four and a half years ago. Both of his parents are deceased. He has two brothers, who live in Hayward, California and Cypress, Texas, and with whom he has weekly

and monthly contact, respectively. His brother and sister-in-law, Richard and Deborah Pullen, were willing to be sureties.

Defendant was married for thirteen years, and has one son, who lives in Nebraska, and with whom Defendant has monthly contact.

Defendant has been self-employed as a contractor for 13 years. He makes between two and five thousand dollars a month, and also receives six hundred dollars a month from a pension. From 1995 to 1999, he worked at Home Depot, and from 1971 to 1995, he worked at Carpenter's Union in Oakland in carpentry. He has a high school education.

Defendant has no history of mental illness. He quit drinking in 1999. He has not used illicit drugs, except for marijuana in high school.

Thirteen years ago, in 1999, he was convicted of a felony for having sex with a minor under 16 years of age and was sentenced to three years in prison. The government proffered at the hearing that Defendant was the victim's volleyball coach, that she was fourteen years old, and that the event occurred on an overnight trip for the volleyball team.

In 2003, Defendant's parole was revoked for violations listed in the department of corrections records as: being in prohibited areas without permission, access to a firearm, unauthorized possession of a knife, access to a simulated firearm, not to possess or have access to alcohol, and not to have contact with minors. The revocation resulted in 57 days of prison time for Defendant. The government proffered at the hearing that this violation was based on Defendant living at an alternate address that he did not tell his parole officer about. Defense counsel proffered that Defendant was doing construction work on a house and had a key to the house for that reason; that he was not living at the house; and that the firearm in the house was registered to the owner of the house. Defense counsel proffered that the owner of the house had a minor daughter, but that she was not at the house at the same time as Defendant.

In 2004, Defendant's parole was again revoked, and he served five months in prison. Neither side proffered information about this revocation, and Pretrial Services did not receive any parole records for this violation.

The following people appeared in support of Defendant at the hearing. David Anderson is a lifelong friend of Defendant. He has no criminal history, and was willing to post $50,000 in cash for the bond. He signed on the $75,000 bond as a surety. Robert Cronin, Defendant's former brother in law, will serve as a surety. He was arrested 30 years ago for a DUI in Oakland. He is a retired engineer, and posted a $150,000 property that he owns outright. His wife, Yolanda Cronin, was also willing to serve as a surety and post the property.

The sureties were made aware of the serious charges against Defendant. The Court directly addressed each of them to determine their suitability as sureties. The Court emphasized the risks of co-signing the bond, and the serious nature of the sureties' voluntary agreements to stake their property on Defendant's compliance with the release order. The Court instructed the sureties that they were executing a legally enforceable agreement and obligating themselves to pay the entire amount of money to the government if Defendant is non-compliant. Both of the sureties confirmed their identities and employment, and were willing to sign Defendant's release bond. The Court finds that they have sufficient moral suasion with him to reasonably assure that he will not violate the conditions of his pretrial release.

Stuart Selland, a long-time friend of Defendant's, who lives only a few miles away, will serve as a custodian. He has no criminal history and is a self-employed photographer who makes $55,000 a year. Deborah Pullen, Defendant's sister-in-law, will serve as a second custodian. She has no criminal history, and earns $75,000 a year. One of these custodians will visit Defendant on a daily basis while he is on pretrial release. The Court explained to the custodians the serious nature of the obligation, including that they could be held in contempt of Court if they knew about Defendant violating pretrial release conditions and failed to report the violation to Pretrial Services, and Mr. Selland and Ms. Pullen indicated that they understood and voluntarily took on the responsibility of being a custodian.

Defendant's 1999 conviction for sex with a minor under the age of 16 may conceivably show that he poses a danger to the community in that there is a risk that he may attempt to repeat this crime while on pretrial release. However, the conviction occurred thirteen years ago, and there is no evidence that Defendant has had sex with or otherwise molested a minor since then. In

addition, Defendant had the opportunity to commit this crime on an overnight trip for the volleyball team he coached. No such opportunities will present themselves while he is on pretrial release in his home, where he lives alone, on electronic monitoring. In addition, he will have no contact with minors. Also, the government proffered at the hearing that Defendant stated that one of the reasons he had committed the crime was that he had been drinking alcohol. Defendant quit drinking in 1999, and will be required to abstain from alcohol as a condition of his release. The Court finds that the conditions of release listed in the bond will reasonably mitigate the risk of danger that Defendant might molest a minor while on release.

Although it is concerning that Defendant previously had his parole revoked twice, the information that has been presented to the Court concerning the circumstances of these parole revocations does not clearly convince the Court that Defendant poses an unmitigable risk of danger. Although the government proffered that Defendant had access to a firearm, there is no evidence in the record that Defendant has ever been physically violent. Although the Department of Corrections' records state that Defendant violated the condition that he was not to have contact with minors, the government did not assert that Defendant harmed or tried to harm the minor, and defense counsel asserts that no contact occurred at all. Regardless, Defendant will be prohibited from possessing firearms and having contact with minors under the conditions of his pretrial release.

The conditions of release will mitigate any danger Defendant poses to the community. He will be confined to his home, on electronic monitoring, without internet access, having no contact with minors. Pretrial Services will assure themselves that he has no computer or internet access during their home visits, and his custodians will confirm that he is complying with the conditions of their release during their daily visits. Defendant has already surrendered his smartphone to one of his custodians. If Defendant leaves his house, Pretrial Services will be notified. If he violates a condition of his release, Defendant may cost his lifelong friends their property and money. Accordingly, the Court finds that the government has not met its burden of showing by clear and convincing evidence that Defendant poses a danger to the community that cannot be reasonably mitigated by any conditions of pretrial release.

United States District Court
Northern District of California

**III. CONCLUSION**

Pretrial release should be denied only in rare circumstances, and any doubt about the propriety of release should be resolved in the defendant's favor. *Motamedi*, 767 F.2d at 1405. The Court's inquiry with respect to the question of pretrial release is whether, considering the factors in section 3142(g), any conditions or combination of conditions in section 3142(c) will reasonably assure Defendant's appearance and the safety of the community.

The Court finds that that the government has not shown by clear and convincing evidence that no condition can reasonably assure the safety of the community. The government did not argue that Defendant poses a risk of flight. The conditions of release set forth on the bond are sufficient to reasonably assure Defendant's appearance and the safety of the community.

Accordingly, Defendant shall be released on the conditions set forth in the bond, which is filed separately. This order will take effect once Pretrial Services has confirmed that Defendant has a landline installed in his house.[1]

**IT IS SO ORDERED.**

Dated: December 18, 2012

KANDIS A. WESTMORE
United States Magistrate Judge

[1] At the December 13, 2012 detention hearing, the undersigned agreed to stay the release order for 24 hours after it was issued to allow the government to file a motion for revocation before the District Court. On December 14, 2012, Judge Wilken granted the government's motion to stay the order before it had been issued. The government then filed its appeal of this decision on December 17, 2012. This release order was signed on December 18, 2012. Thus, there is no longer a need for a 24-hour stay.